# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

SERVICE PUMP & SUPPLY CO., INC,

        Plaintiff,

v.                             CIVIL ACTION NO. 3:18-00976

SUN INDUSTRIES, LLC and
TOBY BERTHELOT,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the Motions for Summary Judgment submitted by Defendants Sun Industries, LLC ("Sun") and Toby Berthelot, and Plaintiff Service Pump & Supply Co., Inc.[1] *See* ECF Nos. 29, 44, 47. The motions are focused on Plaintiff's allegation that Defendants breached a contract between the parties by refusing to pay it the full contract price. *See Compl.*, ECF No. 1; *Am. Compl.*, ECF No. 19.

The dispute in this case is relatively straightforward. Both parties argue that they are entitled to summary judgment based upon their own interpretation of a material term in a rental contract for generators: price. *See Pl.'s Mot. for Summ. J.*, ECF No. 29, at 2*; Defs.' Mot. for Summ. J.*, ECF No. 47, at 1–2. To be more specific, Defendants argue that the contract requires them to pay Plaintiff based on how long they actually *used* the generators, whereas Plaintiff argues that the contract requires Defendants to pay Plaintiff for *at least* one full month's use of the generators, regardless of whether Defendants used the generators for less time. *See id.*

The parties have fully briefed the issues and the motions are now ripe for adjudication. As

---

[1] Plaintiff moves for summary judgment on its claims against only Defendant Sun.

explained below, the Court **GRANTS**, **IN PART**, Plaintiff's Motion for Summary Judgment, and **DENIES** Defendants' Motion for Summary Judgment.

## I. Background

The following facts are undisputed, as the core dispute in this case is what conclusion should result from the facts. In September of 2017, Defendant Sun was working on a flood relief project in Collier County, Florida, and entered into a rental contract with Plaintiff for generators. *See Mem. in Supp. of Defs.' Mot. for Summ. J.*, ECF No. 48, at 1; ECF No. 32-3; ECF No. 32-5. The parties negotiated the terms of the contract exclusively through e-mail communications on September 13, 2017. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, ECF No. 30, at 1. The following is the relevant portion of the negotiations after Jared Stratton, Plaintiff's employee, sent an email to Blake Thibodeaux, Defendant Sun's division manager, with a spreadsheet setting forth the *daily* rental fee for each of the generators Defendant Sun sought to lease:

> Mr. Thibodeaux (12:25 pm): We will take all of these. Can you send a monthly rate for each unit and the exact locations of each unit so we schedule pick up[?]
>
> Mr. Stratton (12:29 pm): Blake, how do you want to handle the deposit?
>
> Mr. Thibodeaux (12:33 pm): Send me the requoted sheet with monthly rates and I can issue the PO (purchase order).
>
> Mr. Stratton (1:16 pm): Can we do $10,000.00 today on a credit card and then ACH[2] $129,000.00 by the end of the week?[3]
>
> Mr. Thibodeaux (1:39 pm): Jared, we can provide a card for deposit. Send me payment amount and I will get Julie to provide you with a card.

---

[2] "ACH" is the acronym for Automated Clearing House—the primary system that agencies use for electronic funds transfer.
[3] The Court notes that Plaintiff, in both its original and amended complaint, made an egregious error by claiming that Defendant Berthelot made this statement. *Compl.*, at 1; *Am. Compl.*, at 2.

ECF No. 32-3, at 1–5.

Subsequently, Mr. Stratton and Defendant Berthelot engaged in the following negotiations:

> Mr. Stratton (2:17 pm): Toby, we normally do 50% up front but are willing to make concessions. We can do $35,000.00 (25%) on the card and send weekly invoices that will be on net 30.[4]
>
> Defendant Berthelot (2:31 pm): Jared, we have no issue giving you $10k now or more if you need but the full monthly payment by the end of the week seems excessive. We have net 30 day payment terms with the people we are working for so if net 30 could be accommodated it would be appreciated.
>
> Defendant Berthelot (3:21 pm): We can do that. I need the Generator locations ASAP tho (sic) to get trucks rolling. Thanks for your help! Julie Please get with Jared to process the payment job no 17C004 and Lauren can give you the PO reference.

ECF No. 32-3, at 1–5.

Following these negotiations, Defendant Sun made an initial payment of $35,000 to Plaintiff, took possession of the generators at their locations in Louisiana and Texas, returned all the generators back to the appropriate location within sixteen days, and notified Plaintiff of the return. *See Mem. in Supp. of Defs.' Mot. for Summ. J.*, at 2; ECF No. 32-7; ECF No. 32-9. Plaintiff then notified Defendant Sun that, while it would accept return of the generators, Defendant Sun would still have to pay for one full month of use because "[t]he generators had a 1 month minimum when they were rented." ECF No. 32-7. Defendant Sun disagreed with this conclusion and requested Plaintiff to indicate where the parties agreed upon a one-month minimum term. *See id.* Plaintiff never responded. *See id.* Plaintiff then filed its complaint on

---

[4] "Net 30" requires that a customer pay a supplier the total amount owed within 30 days of receipt of the goods. ECF No. 49, at 5.

May 31, 2018, and alleged that it is owed at least $104,104.00 based on the agreement between the parties. *See Compl.*, at 1.

## II. Standard of Review

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted). Therefore, summary judgment will not be granted if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 247–48.

## III. Discussion

The central issue in this case is what the contract between the parties requires Defendants to pay Plaintiff. Plaintiff argues that Defendants agreed to pay Plaintiff for at least one month's use of generators—$139,104.00—regardless of how long the generators were actually used, and this agreement is evidenced by the discussions between the parties. *See Pl.'s Mot. for Summ. J.*, at 2. On the other hand, Defendants argue that, because the discussions between the parties only referred to monthly *rates*, not monthly *minimums*, trade usage states that the price is dependent on how long Defendants actually used the generators. *Defs.' Mot. for Summ. J.*, at 1–2.

Because the Court finds the distinction between monthly rates and monthly minimums to

be a red herring, and Defendants clearly agreed in writing to pay Plaintiff $139,104.00, the Court holds that Plaintiff is entitled to summary judgment on its breach of contract claim.

In West Virginia, "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent." Syl. Pt. 5, *Virginian Exp. Coal Co. v. Rowland Land Co.,* 131 S.E. 253 (W. Va. 1926). Relevant to determining whether there was mutual assent in commercial contracts such as this one, Article 2A of the Uniform Commercial Code ("UCC") states that contract terms "may be explained or supplemented" by "usage of trade…." W. Va. Code § 46-2A-202. However, it is crucial to note that, while contract terms may be explained or supplemented by usage of trade, terms cannot be *contradicted* by usage of trade. *See Adkins v. Inco Alloys Intern., Inc.*, 417 S.E.2d 910, 917 (W. Va. 1992) (holding that, while terms may be "explained or supplemented" by usage of trade, "it is generally recognized that [usage of trade] cannot be used to vary the explicit terms of a contract."); *see also U.S. for Use and Ben. of Ace Sheet Metal Works, Inc. v. Bayport Const. Corp.*, 953 F.2d 641 (4th Cir. 1992) (holding that, under an identical Virginia UCC statute, the district court did not err in allowing "the admission of evidence of business custom" because the custom "did not contradict a term of the contract."); *Lion Oil Trading & Transp., Inc. v. Statoil Marketing and Trading (US) Inc.*, 728 F.Supp.2d 531, 535 (E.D.N.Y. 2010) (holding that, under an identical New York UCC statute, usage of trade can be used to determine a contract's meaning "so long as that extrinsic evidence does not contradict the contract's language.").

There is no dispute in this case that the parties entered into a contract; the only question is whether the Defendants agreed to pay Plaintiff $139,104.00, regardless of how long they used the generators. The following facts support Plaintiff's position that the parties did in fact reach this agreement.

When requesting payment, Plaintiff's employee sent an email to Defendant Sun's employee asking if the parties can "do $10,000.00 today on a credit card and then ACH *$129,000.00 by the end of the week?*" Thus, Plaintiff's made a clear offer to Defendants to rent them the generators in exchange for $10,000.00 on that day and $129,000.00 by the end of the week. In response to this offer, Defendant Berthelot merely stated that "the full monthly payment *by the end of the week* seems excessive," and that it would "be appreciated" if the full monthly payment could be made within 30 days of receiving the generators. Therefore, Defendants responded to Plaintiff's offer with a counter-offer merely asking for more *time* to make that full payment.[5] At no point did Defendants counter-offer a lower price, or ask Plaintiff why it was requesting the full monthly payment—a logical question if Defendants truly believed that the final price was undetermined and that Plaintiff may not be entitled to an additional $129,000.00.

Additionally, further agreements provide support for the fact that Defendants agreed to pay Plaintiff $139,104.00. For example, when Plaintiff's employee told Defendant Berthelot that [w]e can do "$35,000.00 (25%) on the card" Defendant Berthelot responded in the affirmative. Thus, Defendants agreed to a deposit that was based on the percentage of the full monthly payment, not an arbitrary number. Furthermore, once the deposit was made, Defendant Sun issued an updated purchase order, showing a balance of $104,104.00. *See* ECF No. 19-1, at 1–4.

It is clear from the facts above that, on the face of the agreement, Defendants agreed to pay Plaintiff the full monthly price of $139,104.00. However, Defendants argue that there is more to this agreement than meets the eye, and the following facts help support Defendants' position that it only agreed on a contract price based upon the usage of the generators. *See Mem. in Supp. of*

---

[5] This fact bears repeating. It is Defendants simple position that they never agreed to pay Plaintiff $129,000.00. Yet, when Plaintiff asked Defendants to pay it $129,000.00, they responded by asking for 30 days to do so.

*Defs.' Mot. for Summ. J.*, at 6–10. First, the conversations between the parties focused on monthly *rates*, and Defendants have evidence that a monthly rate is distinct from a *minimum monthly payment*. *See id.* at 4. For example, Plaintiff's own corporate representative, Patrick Farrell, acknowledged that a monthly rate and a one-month minimum rental term were two different terms in a contract. *See Dep. of Farrell*, ECF No. 47-4, at 8. Second, Defendant Berthelot, who is also Defendant Sun's corporate representative, testified that monthly rates are adjusted based on usage, and that monthly minimum terms are "non-standard terms" that must be specifically called out in a contract to avoid confusion.[6] *See Dep. of Berthelot*, ECF No. 47-1, at 7, 20. There is additional evidence that supports this testimony. For example, Defendant Sun's monthly minimum rental agreements with other vendors included that term in writing, and Plaintiff's monthly minimum rental agreement with its vendor also included that term in conspicuously bolded, highlighted, and asterisked writing. *See* ECF Nos. 47-3, 47-5.

The Court finds Defendants arguments unpersuasive. First, Defendants' evidence and argument differentiating monthly rates from monthly minimums is immaterial in this situation, because the relevant communications between the parties that specifically identified the price of the rentals mentioned neither monthly minimums nor monthly rates. Rather, Plaintiff simply asked Defendants if they would pay it "$129,000.00 by the end of the week," and Defendant responded by stating that this payment "by the end of the week seems excessive," and that "if net 30 could be accommodated it would be appreciated." Thus, in these specific negotiations discussing payment, neither party discussed daily rates, monthly rates, nor monthly minimums, and it is abundantly clear what the payment terms of the contract are: Defendants agree to pay Plaintiff $139,104.00, but they have 30 days from the receipt of the generators to make that payment. Any

---

[6] In this case, there was never an inclusion of the phrase "monthly minimum."

argument by Defendant that the communications say otherwise because of the distinction between monthly minimums and monthly rates ignores the plain words in the agreement.

Secondly, Defendants' argument that, pursuant to usage of trade, the term monthly "minimum" must be specifically called out in a contract to avoid confusion must be rejected. While usage of trade may require rental contracts not stating the exact words "monthly minimum" to have payments based on actual usage, the Court cannot apply that usage of trade to this agreement. Defendants themselves have accurately pointed out that the UCC "does not allow usage of trade evidence that is *contradictory to other terms within the contract*." *See Mem. in Supp. of Defs.' Mot. for Summ. J.*, at 10 (emphasis added). Rather, contract terms may only be *explained* or *supplemented* by usage of trade. Thus, because, for the reasons demonstrated earlier, the contract terms require Defendants to pay Plaintiff $139,104.00, a term that allows Defendants to pay Plaintiff *less* than $139,104.00 is contradictory to the contract, and thus cannot be read into the agreement based upon trade usage.[7] For those reasons, the Court denies Defendants' motion for summary judgment, and grants Plaintiff's motion for summary judgment on its breach of contract claim.

**IV. Conclusion**

Based upon the analysis provided above, the Court **GRANTS**, **IN PART**, Plaintiff's Motion for Summary Judgment, and Amended Motion for Summary Judgment, on its breach of contract claim against Defendant Sun (ECF Nos. 29, 44), and **DENIES** Defendants' Motion for Summary Judgment (ECF No. 47). The Court **DIRECTS** Plaintiff to file any motion for summary

---

[7] This rule makes practical sense. If usage of trade allowed otherwise, Defendants could use a technicality—the fact that no party used the precise word "minimum" in a contract negotiated within hours over email—to avoid paying a price that they agreed to pay without any stated exception. While technically the word "minimum" was never used, a minimum payment was nonetheless clearly called out for when Plaintiff requested *a precise dollar amount* by a certain date, and Defendants counter offered *to pay that precise dollar amount* by a later date.

judgment against Defendant Berthelot by **May 27, 2019**, and **DIRECTS** Defendants to file a memorandum addressing Plaintiff's motion for summary judgment regarding the credit contract's obligation of interest, attorney fees, and costs, by **May 27, 2019.** Further, the Court **ORDERS** that all remaining dates included in this Court's August 30, 2018, scheduling order be suspended.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 20, 2019

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE